IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank M. Burock,                           :
                    Petitioner             :
                                           :
          v.                               :
                                           :
Office of the Budget                       :
(State Civil Service Commission),          :     No. 656 C.D. 2021
                    Respondent             :     Submitted: January 28, 2022


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE LORI A. DUMAS, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                    FILED: May 9, 2022


          Frank M. Burock (Burock), *pro se*, petitions for review of the April 29,
2021 order of the State Civil Service Commission (Commission) sustaining the
decisions of the Office of the Budget (Employer) to impose a level-two alternative
discipline in lieu of suspension with final warning (ADLS-2) and to remove Burock
from regular Accountant 3 employment with Employer's Executive Offices, and
dismissing Burock's appeal therefrom. Upon review, we affirm.


                              **I. Background**
                  **A. Disciplinary Actions by Employer**
          Burock worked for Employer's Bureau of Accounting and Financial
Management (BAFM) as an Accountant 3 from March 2012 until his termination in

June 2019.  Comm'n Adj., 4/29/21 at 3, Finding of Fact (F.F.) 3-4 & 6, Supplemental Reproduced Record (S.R.R.)[1] at 410b; *see also id.* at 15, S.R.R. at 422b.  Burock was tasked with assisting in the oversight of the fiscal and budgetary affairs of multiple Commonwealth agencies by reconciling and analyzing financial information, preparing financial statements and forecasting budgetary and cash needs.  F.F. 7.  By signature dated February 21, 2018, Burock acknowledged receipt of Employer's job performance standards for his position.  Comm'n Adj., 4/29/21 at 16, S.R.R. at 423b; *see also* Transcript of Testimony (T.T. 2020) at 76, S.R.R. at 78b.[2]  As a senior level accountant, Burock was expected to provide guidance to other accountants.  F.F. 8.

In January 2019, Employer placed Burock on a performance improvement plan (January 2019 PIP) for the January 2019 to March 2019 rating period (first rating period).  F.F. 10.  The January 2019 PIP directed Burock to attend weekly meetings with Michelle Baker (Baker), BAFM General Accounting Manager with Employer's Office of Comptroller Operations; Jamie Jerosky (Jerosky), BAFM Financial Services Manager; and Andy Cameron (Cameron), Assistant Director of Employer's General Accounting Unit, to review and discuss his progress.  F.F. 9 & 11; Comm'n Adj., 4/29/21 at 15 nn. 4-6, S.R.R. at 422b.  Specifically, Baker, Jerosky

---

[1] We note that we have added the letter "b" following the page numbers in our citations to the supplemental reproduced record (S.R.R.), although Employer failed to do so in accordance with Pennsylvania Rule of Appellate Procedure 2173.  *See* Pa.R.A.P. 2173 (providing that pages of the S.R.R. shall be numbered separately in Arabic figures followed by a small letter "b").  We further note that this is the third instance in as many appeals by Burock in which we have found it necessary to remind Employer of this rule.

[2] The Commission heard evidence in two proceedings in October and November 2020. The November 2020 hearing was a continuation of the October 2020 proceeding.  *See* T.T. 2020 at 335, S.R.R. at 337b.  As the two hearing transcripts are paginated continuously in the S.R.R., any citations herein to the hearing transcripts shall be as to one document, designated "T.T. 2020."

and Cameron addressed Burock's failure to accurately reconcile accounts, correctly mark unpaid items, properly prepare the Underground Storage Tank Indemnity Fund (USTIF) statement and independently research and resolve various other matters. Comm'n Adj., 4/29/21 at 18, S.R.R. at 425b. Jerosky was also available to answer Burock's questions outside the meetings. *Id.* The January 2019 PIP also informed Burock of the specific standards required to obtain a rating of "Satisfactory" in each of the following job rating categories: "Job Knowledge/Skills," "Work Results," "Communications," "Initiative/Problem Solving" and "Work Habits."[3] F.F. 12. Burock was required to obtain a rating of "Satisfactory" in all job categories to achieve an overall "Satisfactory" rating in the subsequent interim Employee Performance Review (EPR). F.F. 14. Further, the January 2019 PIP cautioned Burock that failure to achieve an overall rating of "Satisfactory" on the interim EPR could result in progressive discipline, up to and including removal. F.F. 15.

In April 2019, Employer issued an interim EPR deeming Burock's overall job performance during the first rating period "Unsatisfactory." F.F. 17-18. Although Employer rated Burock's job performance "Satisfactory" in the individual categories of "Interpersonal Relations" and "Work Habits," Burock nevertheless failed to achieve "Satisfactory" ratings in the four remaining categories. F.F. at 17-18, S.R.R. at 413b; Comm'n Adj., 4/29/21 at 19, 426b. Employer rated Burock's performance "Unsatisfactory" in the individual category of "Job Knowledge/Skills" on the basis of his continued failure to grasp the basic job skills necessary to complete assigned tasks. F.F. 19 (citing T.T. 2020 at 91-92, S.R.R. at 93b-94b; Certified Record (C.R.), Appointing Authority Exhibits (A.A. Ex.) 7, April 2019 Interim EPR; C.R., A.A. Ex. 8, Weekly Meeting Minutes). Specifically, Burock

---

[3] We note that the individual job performance category of "Interpersonal Relations" does not appear in the list enumerated in finding of fact 12. *See* F.F. 12.

displayed a lack of knowledge and understanding in completing unpaid items and in updating the USTIF statement quarterly, resulting in missed and miscalculated items. *Id.* Burock also enlisted another accountant to analyze the "1190000 balancing account," even though that task was his responsibility. *Id.*

In support of Burock's "Unsatisfactory" job performance rating in the "Work Results" category, Employer again cited his failure to independently and correctly complete the USTIF statement, as well as his failure to complete the checklist for the Capital Facility Reports. F.F. 20 (citing T.T. 2020 at 92, S.R.R. at 94b; C.R., A.A. Ex. 7, April 2019 Interim EPR). Regarding Burock's "Unsatisfactory" rating in the individual category of "Communications," Employer cited his inability to explain "everyday items" such as account reconciliations and the USTIF statement, as well as his argumentative behavior with management regarding a treasury adjustment. F.F. 21 (citing T.T. 2020 at 92, S.R.R. at 94b; C.R., A.A. Ex. 7, April 2019 Interim EPR). Employer also rated Burock's job performance "Unsatisfactory" in the individual category of "Initiative/Problem Solving," due to his failure to independently research issues and remove old adjustments from financial statements. F.F. 22 (citing T.T. 2020 at 92-93, S.R.R. at 94b-95b; C.R., A.A. Ex. 7, April 2019 Interim EPR).

On April 22, 2019, Employer issued an ADLS-2, the equivalent of a three-day suspension, on the basis of Burock's unsatisfactory job performance during the first rating period, based on the recommendations of Baker, Jerosky and Cameron. F.F. 1 & 33; Comm'n Adj., 4/29/21 at 21 (citing T.T. 2020 at 44, 93, 153, S.R.R. at 46b, 95b and 155b).[4] Burock appealed, asserting that Employer's decision

_____

[4] Prior to Employer's imposition of the ADLS-2, Employer had issued three disciplinary actions on the basis of Burock's "Unsatisfactory" job ratings from previous rating periods—a February 2018 written reprimand, a July 2018 Level One (ADLS-1) and a January 2019 ADLS-1.

4

to impose the ADLS-2 was excessive, unfair and based on a pattern of discrimination and retaliation[5] dating back two years.  *See* C.R., A.A. Ex. B, ADLS-2 Appeal at 1.[6]

F.F. 33-36.  The January 2019 ADLS-1 did not progress to an ADLS-2, owing to Burock's improvement on one of the job performance rating categories.  F.F. 37.  This Court affirmed the July 2018 ADLS-1 disciplinary action in *Burock v. State Civ. Service Commission (Office of the Budget)* (Pa. Cmwlth., No. 1865 C.D. 2019, filed May 13, 2021) (*Burock I*).  We affirmed the January 2019 ADLS-1 disciplinary action in *Burock v. State Civ. Service Commission (Office of the Budget)* (Pa. Cmwlth., No. 81 C.D. 2020, filed May 13, 2021) (*Burock II*).

[5] The Civil Service Reform Act, 71 Pa.C.S. §§ 2101-3304 (Act), does not provide for a separate statutory claim of retaliation, independent of a discrimination claim under Section 2704, 71 Pa.C.S. § 2704.  Rather, proving retaliation is one mode of establishing that an appointing authority engaged in discrimination by basing a personnel action on "nonmerit factors."  *See* Section 2704 of the Act, 71 Pa.C.S. § 2704; *see also Beaver Cnty. v. Funk*, 492 A.2d 118, 121 & 121 n.7 (Pa. Cmwlth. 1985) (explaining that evidence regarding financial state of county at time employer furloughed a probationary status caseworker, coupled with testimony as to witness's belief that furlough was imposed in retaliation for bargaining unit's refusal to accept wage freeze, satisfied caseworker's burden of establishing that furlough was based on nonmerit factors, and thus, furlough was discriminatory); *see also* 71 P.S. § 741.905a (prohibiting discrimination by officers or employees of the Commonwealth in connection with any personnel action with respect to the classified service on the basis of political or religious opinions or affiliations, labor union affiliations, race, national origin or other non-merit factors).

[6] Section 3003 of the Act provides, in relevant part:

> It shall be the duty of the [C]ommission . . . [t]o conduct hearings as follows:
>
> > (i) A regular employee in the classified service may, within 20 calendar days of receipt of notice from the appointing authority, appeal in writing to the [C]ommission a permanent separation, suspension for cause, furlough or demotion on the grounds that the action has been taken in the employee's case in violation of the provisions of this part.  Upon receipt of the notice of appeal, the [C]ommission shall promptly schedule and hold a public hearing.
>
> > (ii) A person who is aggrieved by an alleged violation of section 2704 (relating to prohibition of discrimination) may appeal in writing to the [C]ommission within 20 calendar days of the alleged violation.  Upon receipt of the notice of appeal, the

For the March 28, 2019 to May 30, 2019 rating period (second rating period), Employer placed Burock on another performance improvement plan (March 2019 PIP) imposing the same performance standards and directives as the preceding PIP. F.F. 23. In June 2019, Employer issued an interim EPR (June 2019 interim EPR) based on Burock's job performance during the second rating period. F.F. 27-28; Comm'n Adj., 4/29/21 at 21-22, S.R.R. at 428b-29b. Burock again received an overall "Unsatisfactory" job performance rating due to his failure to achieve "Satisfactory" ratings in any job performance category apart from "Interpersonal Relations" and "Work Habits." *Id.* Employer rated Burock's job performance "Unsatisfactory" in the individual category of "Job Knowledge/Skills" based on his continued failure to grasp basic job skills, such as reconciling accounts and completing T-accounts. F.F. 28 (citing T.T. 2020 16-07, S.R.R. at 108b-09b; C.R., A.A. Ex. 11, June 2019 Interim EPR). In regard to Burock's "Unsatisfactory" rating in the "Work Results" category, Employer again cited his inability to correctly reconcile accounts, as well as his failure to complete and follow up on a "PPA Taxi transfer." F.F. 29. Rating Burock's job performance "Unsatisfactory" in the "Communications" category, Employer highlighted Burock's inability to understand and explain unpaid items for account reconciliations, his sarcastic and unprofessional remarks in response to the April 2019 interim EPR and his error in directing an agency to send federal e-mail correspondence to an obsolete federal group e-mail account. F.F. 30 (citing T.T. 2020 at 107, S.R.R. at 109b); C.R., A.A. Ex. 11, June 2019 Interim EPR). Finally, Employer rated Burock's job performance

[C]ommission shall promptly schedule and hold a
public hearing.

71 Pa.C.S. § 3003(7)(i), (ii). Section 2103 of the Act defines the term "appointing authority" to include "[t]he officers, board, commission, individual or group of individuals having power by law to make appointments in the classified service." 71 Pa.C.S. § 2103.

"Unsatisfactory" in the individual category of "Initiative/Problem Solving" based on his failure to independently resolve unpaid items, complete basic accounting functions, confirm completion of an "AM document" and correctly complete debit and credit for the "USTIF statement FI recon backup." F.F. 31 (citing T.T. 2020 at 108, S.R.R. at 110b; C.R., A.A. Ex. 11, June 2019 Interim EPR).

As a result, Baker, Jerosky and Cameron recommended termination of Burock's employment. Comm'n Adj., 4/29/21 at 24, S.R.R. at 431b (citing T.T. 2020 at 46, 109 & 155-56, S.R.R. at 48b, 111b & 157b-58b). By letter dated June 19, 2019, Employer notified Burock of its decision to remove him from Accountant 3 employment, effective at the close of business on June 20, 2019. *Id.* (citing T.T. 2020 at 110-11, S.R.R. at 112b-13b); *see also* C.R., A.A. Ex. D, Termination Letter at 1.

Burock appealed his termination, again asserting that Employer's disciplinary action was excessive, unfair and based on discrimination. *See* C.R., A.A. Ex. E, Removal Appeal at 2. Burock also contended that in November 2017, former Assistant Director Paul Jones threatened to terminate him if he related to Director Mike Burns his allegation that Jones had "plugged" numbers on a USTIF statement.[7] *See id.*

### B. Appeals to the Commission

Employer filed a motion to combine Burock's appeals, which the Commission granted. *See* C.R., Item No. 5, Comm'n Letter, 12/20/19. On October

---

[7] Burock asserts that Jones ordered "multiple plugs," which Burock described as the practice of falsifying numbers to balance accounts, in a September 30, 2017 USTIF statement, and that Jones "was gone a few months later." Burock's Br. at 15 & 17.

14, 2020 and November 10, 2020, the Commission held hearings in which both Burock and Employer participated. *See* T.T. 2020 at 1-2 & 328-29, S.R.R. at 3b-4b & 330b-31b.

**1. Evidence Concerning Burock's Job Performance**

Employer's witnesses provided the following testimony in support of the challenged disciplinary actions. Jerosky testified that Burock failed to verify the accuracy of his work with supporting documentation, solve problems independently, provide accurate adjustments and conduct necessary research. *See* Comm'n Adj., 4/29/21 at 18, S.R.R. at 425b (citing T.T. 2020 at 41 & 43, S.R.R. at 43b & 45b). For instance, Burock had incorrectly marked items for deletion, mistakenly included accruals in financial statements, and improperly changed the "methodology" by including unnecessary data in reports. *Id.* at 19, S.R.R. at 426b (citing T.T. 2020 at 42, S.R.R. at 44b). Further, Burock failed to timely submit assignments and did not complete treasury reconciliations on multiple occasions. *Id.* (citing T.T. 2020 at 60-61, S.R.R. at 62b-63b). Jerosky further attested that Burock sought guidance from entry-level accountants when, as a senior level accountant, he was expected to provide assistance to other accountants. *Id.* at 20, S.R.R. at 427b (citing T.T. 2020 at 45, S.R.R. at 47b).

Baker, Burock's primary supervisor since March 2018, testified that Burock failed to grasp the basic job skills necessary to complete assigned tasks, such as updating quarterly financial statements and calculating various items. *Id.* at 19, S.R.R. at 426b (citing T.T. 2020 at 91-92, S.R.R. at 93b-94b). For instance, Burock was unable to explain account reconciliations, the USTIF statement and other "everyday items." Comm'n Adj., 4/29/21 at 20, S.R.R. at 427b (quoting T.T. 2020

8

at 92, S.R.R. at 94b). Baker attested that Burock failed to independently research various issues, including those pertaining to old adjustments on financial statements that should have been removed and unpaid amounts included in the Capital Facilities Report. *Id.* at 20-21, S.R.R. at 427b-28b (citing T.T. 2020 at 92-93, S.R.R. at 94b-95b). Burock also improperly marked certain account reconciliations as complete based on seeking guidance from another Accountant 3 employee and failed to independently research the matter himself as directed. *Id.* (citing T.T. 2020 at 107, S.R.R. at 109b. Baker further testified that Burock failed to correctly complete T-accounts, a "basic accounting function," even after receiving guidance during several of the weekly meetings. *Id.* (quoting T.T. 2020 at 107, S.R.R. at 109b). According to Baker, Burock also failed to complete and follow up on a "PPA Taxi transfer" and was unable to search for transactions in Employer's accounting system. *Id.* at 23, S.R.R. at 430b (citing T.T. 2020 at 107-08, S.R.R. at 109b-10b).

Cameron, Burock's "second-level supervisor," testified that Burock failed to conduct necessary research and that he demonstrated an inability to "problem solve." Comm'n Adj., 4/29/21 at 18, S.R.R. at 425b (citing T.T. 2020 at 146-48, S.R.R. at 148b-50b). Further, Burock was unable to consolidate names, dates and items researched in connection with treasury reconciliations. T.T. 2020 at 150, S.R.R. at 152b (citing C.R., A.A. Ex. 8, Weekly Meeting Minutes). Cameron attested that despite years of meeting with Burock in order to improve his job performance, Burock was "constantly post[ing] something that[] [was] completely incorrect" when attempting to complete account reconciliations, noting that if one post had not been remedied, "the agency"[8] might have lost up to $4,000. T.T. 2020 at 151, S.R.R. at 153b. Cameron further attested that during one of the weekly

---

[8] Cameron did not specify to which agency he was referring. *See* T.T. 2020 at 151, S.R.R. at 153b.

meetings, Burock attempted to take credit for a "big issue" that was in fact resolved by another employee. *Id.* at 28, S.R.R. at 435b (citing T.T. 2020 at 370-71, S.R.R. at 372b-73b).

## 2. Evidence Concerning Alleged Discrimination

Burock provided the following testimony in support of his discrimination claims. Burock testified that Employer's decision to terminate his employment was "the culmination of a two-year process of retaliation against [him] by various managers and supervisors," stemming from a disagreement in 2017 with his new manager, Paul Jones, regarding a USTIF financial statement, presumably the alleged "plugging" incident. T.T. 2020 at 175, S.R.R. at 177b; Comm'n Adj., 4/29/21 at 24, S.R.R. at 431b (citing C.R., Burock's Exs. 4 & 5). Burock attested that Jerosky questioned the "incident" upon reviewing the statement and forwarded the matter to Jones. T.T. 2020 at 175, S.R.R. at 177b. Burock informed Jones of his intention to discuss the issue involving the financial statement with Mike Burns (Burns), the Director of the Budget and Jones' direct supervisor. *Id.* at 175-76, S.R.R. at 177b-78b. Burock testified that Jones responded, "I don't agree with you, and if you do that, you'll be gone." Comm'n Adj., 4/29/21 at 24, S.R.R. at 431b (quoting T.T. 2020 at 176, S.R.R. at 178b). Burock asserted that his eventual discussion with Burns influenced Jones to rate his job performance "Unsatisfactory" in an EPR roughly one month later and that Jones threatened to fire him on January 5, 2018. *Id.* at 25, S.R.R. at 432b (citing T.T. 2020 at 176-77 & 187, S.R.R. at 178b-79b & 189b). According to Burock, the "Unsatisfactory" EPR issued by Jones served as the basis for all disciplinary action taken against him by Employer, up to and including his termination, and ultimately frustrated his applications for other

10

positions with the Commonwealth. *Id.* (citing T.T. 2020 at 177-78 & 242-43, S.R.R. at 179b-80b & 244b-45b). Further, Burock accused Baker of being "vindictive" when she counseled him about his nearly exhausted leave balance. *Id.* (citing T.T. 2020 at 235-36, S.R.R. at 237b-38b). Moreover, Burock attested that Employer acted vindictively against him by failing to nominate him for the Governor's Award for Excellence. *Id.* (citing T.T. 2020 at 236-38, S.R.R. at 238b-40b).[9]

Employer's witnesses provided the following testimony in response to Burock's discrimination claims. Jerosky testified that the events from 2017 complained of by Burock had no bearing on the challenged disciplinary actions. *Id.* at 36, S.R.R. at 443b (citing T.T. 2020 at 200-01, S.R.R. at 202b-03b).

Regarding Burock's assertion that his workload exceeded that of a female Accountant 3 who had quit prior to his removal, Baker testified that all accountants, including the accountant referenced by Burock, are assigned more than one financial statement to complete, and that she and Burock shared similar job duties. *Id.* at 29, S.R.R. at 436b (citing T.T. 2020 at 349-50, S.R.R. at 351b-52b). Moreover, Baker pointed out that Burock had worked for Employer for roughly seven years by the time the female Accountant 3 he referenced began her employment. *Id.* (citing T.T. 2020 at 172 & 350, S.R.R. at 174b & 352b).

Cameron testified that owing to his poor job performance, Burock's workload was reduced and that he was not assigned the type of special projects typically performed by Accountant 3 employees. *Id.* at 29, S.R.R. at 436b (citing T.T. 2020 at 152, S.R.R. at 154b). Cameron also attested that he attempted to dispel Burock's belief as to a conspiracy against him, so that Burock could focus on

---

[9] Specifically, Burock testified that a fellow "state employee," Kevin Kayda (Kayda) refused Burock's request to submit his name for the Governor's Award for Excellence. T.T. 2020 at 238-240, S.R.R. at 240b-42b. Kayda's title is not apparent from the record.

11

improving his job performance. *Id.* at 36, S.R.R. at 443b (citing T.T. 2020 at 249-54, S.R.R. at 251b-46b).

### 3. The Commission's Adjudication

On April 29, 2021, the Commission issued an adjudication affirming Employer's disciplinary actions and dismissing Burock's appeal. Comm'n Adj., 4/29/21 at 37-38, S.R.R. at 444b-45b. The Commission deemed credible the testimony provided by Employer's witnesses and cited the various exhibits proffered by Employer evidencing Burock's poor job performance. *Id.* at 29, S.R.R. at 436b. In particular, the Commission noted that Burock's unsatisfactory job performance was documented in the minutes of the weekly meetings held during the rating periods, in work e-mails and in the interim EPRs. Comm'n Adj., 4/29/21 at 18 & 21-22, S.R.R. at 425b & 428b-29b (citing C.R., A.A. Exs. 7-8 & 11-12). Citing the credible testimony of Employer's witnesses and the "detailed narratives" contained in the April 2019 interim EPR, the Commission determined that Burock failed to meet the standards set forth in the March 2019 PIP. *Id.* at 30, S.R.R. at 437b. Specifically, the Commission highlighted Burock's lack of understanding regarding necessary job skills; inaccurate work product, including errors in reconciliations, "unpaid items," the USTIF statement and the Capital Facility Report; failure to independently research and resolve issues; and inability to explain his work. *Id.* (citing T.T., 2020 45 & 91-93, S.R.R. at 47b & 93b-95b; C.R., A.A. Ex. 7, April 2019 Interim EPR). The Commission deemed unpersuasive Burock's claim that his supervisors' assessment of his job performance was erroneous. *Id.* at 31, S.R.R. at 438b. The Commission, therefore, found that Employer imposed the ADLS-2 solely on the basis of Burock's poor job performance during the first rating period. *Id.* at

12

30, S.R.R. at 437b. Thus, the Commission concluded that Employer established good cause to impose the ADLS-2 on Burock. *Id.* at 29 & 32, S.R.R. at 436b & 439b; Conclusion of Law (C.L.) 1.[10]

Moreover, the Commission determined that Employer had just cause to terminate Burock's employment. Comm'n Adj., 4/29/21 at 32, S.R.R. at 439b. The Commission cited Burock's failure to exhibit the basic skills necessary to complete assigned tasks; his inability to accurately reconcile accounts; his erroneous completion of T-accounts, "unpaid items," a "PPA Taxi transfer, an "AM document" and the "USTIF statement FI recon backup"; his failure to independently conduct research; and his inability to explain his work. *Id.* at 33, S.R.R. at 440b (citing T.T. 2020 at 107-08, S.R.R. at 109b-10b; C.R., A.A. Ex. 11, June 2019 Interim EPR).[11] Regarding Jerosky's recollection of Jones' assertion that "[i]t would be better for all if [Burock] were not here at all," the Commission determined that Burock failed to present any evidence suggesting that this purported statement motivated either the issuance of the ADLS-2 or his removal. *Id.* at 26, S.R.R. at 433b. Moreover, the Commission deemed unpersuasive Burock's claim that his supervisor's assessment of his job performance was erroneous. *Id.* at 34, S.R.R. at 441b. The Commission, therefore, found that Burock's removal was based on his "Unsatisfactory" job performance during the second rating period. *Id.* Thus, the Commission concluded

---

[10] The Commission also deemed appropriate the level of discipline (an ADLS-2 with final warning) imposed by Employer on the basis of Burock's "Unsatisfactory" job performance rating in the January 2019 to March 2019 EPR, noting that Employer's disciplinary action was "the next step in progressive discipline" following Burock's receipt of a written reprimand and two ADLS-1 letters. Comm'n Adj., 4/29/21 at 31, S.R.R. at 438b.

[11] The Commission also deemed appropriate the level of discipline imposed by Employer in terminating Burock as the "next step in progressive discipline" following his receipt of the ADLS-2. Comm'n Adj., 4/29/21 at 33-34, S.R.R. at 440b-41b.

13

that Burock's "Unsatisfactory" job performance as documented in the April 2019 interim EPR and supported by the credible testimony of Employer's witnesses "clearly relate[d] to his competence and ability to perform his job duties, thereby providing just cause for removal." *Id.* at 32 & 34, S.R.R. at 439b & 441b; C.L. 2.

The Commission next addressed Burock's allegations of discrimination. Comm'n Adj., 4/29/21 at 35, S.R.R. at 442b. The Commission found that Burock failed to provide any evidence as to his age or in support of his allegation that Employer treated younger employees differently from similarly situated older employees. *Id.*

Further, the Commission determined that Burock failed to substantiate his claim that he received a heavier workload than a female Accountant 3. Comm'n Adj., 4/29/21 at 35, S.R.R. at 442b. The Commission credited Baker's testimony that Burock and the female Accountant 3 shared similar duties, even though she was in her first year of employment as an Accountant 3 with Employer and Burock was in his seventh. *Id.* Moreover, the Commission cited Cameron's credible testimony that Employer reduced Burock's workload due to his poor job performance. *Id.* at 35-36, S.R.R. at 442b-43b.

In regard to Burock's claims of retaliation and hostile work environment stemming from alleged incidents dating back to 2017, the Commission referenced Jerosky's credible testimony that these events had no bearing on the challenged disciplinary actions, as well as Cameron's testimony that he attempted to allay Burock's concerns regarding an alleged conspiracy against him so that Burock could focus on improving his job performance. Comm'n Adj., 4/29/21 at 36, S.R.R. at 443b. Addressing Jerosky's recollection of Jones' purported statement that "[i]t would be better for all if [Burock] were not here at all," the Commission determined

14

that Burock failed to present any evidence suggesting that this statement motivated either the issuance of the ADLS-2 or his removal. *Id.* at 26, S.R.R. at 433b.

The Commission, therefore, determined that Employer presented credible evidence establishing legitimate, non-discriminatory reasons for rating Burock's job performance "Unsatisfactory" in both interim EPRs. Comm'n Adj., 4/29/21 at 26, S.R.R. at 433b. Thus, the Commission concluded that Burock failed to establish a *prima facie* case of discrimination. *Id.* at 35, S.R.R. at 442b.

## II. Discussion

Before this Court,[12] Burock argues that the Commission erred in dismissing his appeals, because Employer has not established the requisite cause to support the challenged disciplinary actions. *See* Burock's Br. at 21-22. Burock asserts that the April 29, 2021 adjudication "is the Commission's opinion only and it is incorrect." *Id.* at 14-15. Burock maintains that he completed his work in a timely manner during the rating periods "with probably 99% of it to [his] supervisor's liking." *Id.* at 13. Further, Burock contends that he submitted into evidence several e-mail threads which "directly contradict" his negative performance reviews by showing that he submitted his work "with hardly a comment" from either Baker, Cameron or Burns. *Id.* at 13 & 18. Burock asserts

---

[12] Our scope of review of a determination of the Commission is limited to determining whether constitutional rights have been violated, an error of law has been committed, or necessary findings of fact are unsupported by substantial evidence. *Williams v. State Civ. Serv. Comm'n*, 811 A.2d 1090, 1092 n.1 (Pa. Cmwlth. 2002); *see also* Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. "[A] court reviewing the penalty imposed on an employee [within the framework of the Civil Service Act] is not to substitute its determination for that of the employer. Rather, the court is merely to make certain that just cause exists and that the appointing authority did not abuse its discretion." *Zuckerkandel v. Dep't of Pub. Welfare*, 415 A.2d 1010, 1011 (Pa. Cmwlth. 1980).

15

that e-mails were the "only way" work was reviewed, as "everything" was confirmed by managers through e-mail. *Id.* at 18. Burock maintains that he timely prepared USTIF statements, but that Jones' lengthy review of one of these statements resulted in tardy transmittal to the client, and that Burock received an interim EPR rating his job performance "Unsatisfactory" within one month of this "incident." *Id.* at 16. Burock also points out that he had performed the same job for roughly six years before receiving his first "Unsatisfactory" job performance rating. *Id.* at 15.[13] Burock contends that the interim EPR comments were "petty[,] nitpicking, duplicative, vindictive and purely retaliatory in nature." *Id.* at 13-14. Burock asserts that "[t]hey can make anything up on an EPR if they want to discredit someone and they did." *Id.*

Further, Burock contends any claim that he could not perform his job is "ludicrous," and that Employer's disciplinary actions were motivated by retaliation. *Id.* Specifically, Burock asserts that Employer retaliated against him when Brian Seno (Seno)[14] influenced Burock's manager to issue a "biased EPR" in July 2017 after learning that Burock had applied for a lateral position in the same division the previous year, though the EPR was ultimately discarded by Burns. *Id.* at 14-15. Burock maintains that Jones improperly placed Burock on a performance improvement plan on the basis of the discarded EPR. *Id.* at 15.[15] Burock also contends that Employer's retaliation was motivated by his decision to notify Burns

---

[13] Burock received an overall "Unsatisfactory" job performance rating in July 2018. *See Burock I*, slip op. at 3.

[14] Burock alleges in his appellate brief that Seno and Jones left in March of 2018. *See* Burock's Br. at 8.

[15] Burock fails to reference a particular PIP. *See* Burock's Br. at 15.

16

of an instance of fraud committed by Jones related to the alleged "plugging" incident. *Id.* at 14. Highlighting Jones' purported pronouncement that "[i]t would be better for all if [Burock] were not here at all," Burock criticizes the Commission's determination that this declaration by Jones did not motivate Employer's imposition of the challenged disciplinary actions. *Id.* at 13 (citing Comm'n Adj, 4/29/21 at 26, S.R.R. at 433b). Further, Burock asserts that Jones made this revealing statement just one month after Burock reported him for fraud. *See id.* Burock also maintains that Employer retaliated against him on the basis of his decision to report Jones and Burns to OIG,[16] Budget Secretary Randy Albright and Auditor General Eugene DePasquale; to report an e-mail sent by Seno to 50 employees which openly discussed the mental health condition of a colleague; and to report Baker for permitting the misuse of Commonwealth property by Danashree Chitnis (Chitnis). *Id.* at 14-16. Burock asserts that the Commission failed to accord proper weight to the evidence he presented and, further, that "[t]he Commission never even considered the possibility of retaliation in their [sic] discussion." *Id.* at 14.

Further, Burock alleges that Baker favored Chitnis, a new female Accountant 3 employee, by permitting her to make personal calls at work for approximately two hours per day during the first six months of her employment. *Id.* at 17-18. Burock also alleges that Employer favored Chitnis by assigning her "only one specific job to do," as compared with the "25 identifiable tasks the typical Accountant 3 is responsible for." *Id.* at 10.[17] Burock further asserts that after Chitnis

---

[16] Burock presumably intends to reference the Office of the Inspector General. *See* Burock's Br. at 14.

[17] Burock points out that the Commission refused to accept as evidence "a very detailed spreadsheet he had prepared comparing [his] workload" with that of Chitnis. *See* Burock's Br. at 10. At the November 10, 2020 hearing, the Commission permitted Burock to question Baker

left in October 2018, her successor, Julia Ridge (whom he alleges was also younger than he), received a similarly "easy" workload. *Id.* at 10. Burock maintains that his workload remained substantially the same over the course of his employment, with the exception of roughly six months in 2016 when it tripled due to turnover. *Id.* at 14. Burock contends that Baker was "furious" and issued him a "horrible EPR" several weeks after he reported the alleged misconduct to Cameron. *Id.* at 17.

Asserting that he "laid out all the reasons his supervisors could and did go after him with a pure hatred and vengeance," Burock "urge[s] the [C]ourt to please read [his] responses (part of the record) to every point brought up in the interim EPRs used to arrive at [his] ADLS[-]2 and removal." *Id.* at 15 & 18. Burock contends that the Commission's "view" that he failed to present evidence in support of his claims is "false," asserting that the Commission "just doesn't want to see the evidence." *Id.* at 19. Further, Burock alleges that he asked eight current Office of the Budget employees to testify on his behalf, but that all refused, citing the hostility in the office and fears of repercussions. *Id.* Burock also asserts that Baker perjured

regarding the workload comparison spreadsheet. *See* T.T. 2020 at 347-50, S.R.R. at 349b-52b. However, the Commission refused to enter the spreadsheet into the record on the basis that Burock failed identify the sources of information upon which he relied in drafting the document or to corroborate the veracity of the allegations contained therein. *See id.* at 213-14 & 376-79, S.R.R. at 215b-16b & 378b-81b. The Commission further noted that Burock could have questioned Chitnis at the hearing regarding her assignments in order to permit comparison of their respective workloads. *See id.* at 378, S.R.R. at 380b.

Nevertheless, Burock attached the spreadsheet and several other extra-record documents to his appellate brief. *See* Burock's Br., Attachments marked "Ex. 12," "AP-21" & "AP-32." "In civil service cases, the Commission is the sole fact-finder." *Perry v. State Civ. Serv. Comm'n (Dep't of Lab. & Indus.)*, 38 A.3d 942, 948 (Pa. Cmwlth. 2011); *see also Shade v. Civ. Serv. Comm'n (Pa. Dep't of Transp.)*, 749 A.2d 1054, 1056 (Pa. Cmwlth. 2000) ("It is axiomatic that the Commission, not this Court, has the power to resolve questions of credibility and to weigh the evidence."). Thus, this Court will not consider the extra-record documents proffered by Burock.

18

herself when he questioned her at the hearing.[18]  *Id.*  Emphasizing his status as a *pro se* litigant, Burock maintains that he "cannot compete with the Budget Office machine."  *Id.* at 20.[19]  Burock, therefore, requests that this Court reverse the April 29, 2021 adjudication of the Commission.  *Id.* at 22.[20]

### A. Good Cause to Impose the ADLS-2

Section 2603 of the Civil Service Reform Act (Act) provides, in relevant part:

(a) **Right to suspend.--**The following apply:

---

[18] Burock fails to specify which portions of Baker's testimony allegedly constituted perjury.  *See* Baker's Br. at 19.

[19] Burock cites Section 803 of the *former* Civil Service Act, 71 P.S. § 741.803, in connection with his claim that Employer lacked good cause to impose the ADLS-2.  *See* Burock's Br. at 13.  However, effective March 28, 2019, the Act of June 28, 2018, P.L. 460, No. 71, repealed and replaced the Civil Service Act.  Employer issued the first disciplinary action at issue in the present matter on April 22, 2019.  Section 2603 of the Act provides that "[e]mployees may only be suspended for good cause."  71 Pa.C.S. § 2603(c).

[20] Burock also requests that this Court "nullif[y]" its orders issued in *Burock I* and *Burock II*, affirming separate adjudications of the Commission sustaining Employer's previous disciplinary actions against Burock.  Burock's Br. at 22.  Burock maintains that the disciplinary actions at issue in those matters exhibited "the same Office of the Budget and State Civil Service Commission biases against [him] running through them."  *Id.*  As noted by the Commission, Employer's decisions to impose the ADLS-2 and terminate Burock constituted the next step in progressive discipline.  *See* Comm'n Adj., 4/29/21 at 31-34, S.R.R. at 438b-41b.  Burock's request to overturn orders of this Court sustaining the disciplinary actions previously imposed by Employer against Burock constitutes an impermissible attempt to collaterally attack those orders.  *See Moeller v. Washington Cnty.*, 44 A.2d 252, 254 (Pa. 1945) (a judgment, order or decree rendered by a court having jurisdiction is not open to collateral attack in any other proceeding); *E.O. v. Dep't of Pub. Welfare* (Pa. Cmwlth., No. 2750 C.D. 2010, filed Sept. 14, 2011), slip op. at 4 n.5 (explaining that the collateral attack doctrine, which is related to collateral estoppel and res judicata, "precludes a litigant from seeking to obtain a favorable outcome in a proceeding through the use of a challenge to a previous related judicial determination"); *see also* Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a) (providing that this Court's unreported memorandum opinions issued after January 15, 2008 may be cited for persuasive value).

(1) An appointing authority may, for disciplinary purposes, suspend without pay an employee holding a position in the classified service.

. . .

**(c) Good cause.**--Employees may only be suspended for good cause.

71 Pa.C.S. § 2603(a)-(c). The appointing authority bears the burden of proving that it had good cause to suspend a civil service employee. *Toland v. State Corr. Inst. at Graterford, Bureau of Corr.*, 506 A.2d 504, 506 (Pa. Cmwlth. 1986). "It is well established that one's relationship with the classified service turns upon a merit concept." *Kanjorski v. Dep't of Lab. & Indus.*, 403 A.2d 631, 632 (Pa. 1979). Accordingly, "[t]his Court has held that good cause must relate to an employee's competence and ability to perform his or her job duties, . . . or must result from conduct that hampers or frustrates the execution of the employee's duties." *Bruggeman v. State Civ. Serv. Comm'n (Dep't of Corr. SCI-Huntingdon)*, 769 A.2d 549, 552 (Pa. Cmwlth. 2001) (citations omitted); *see also Kanjorski*, 403 A.2d at 632-33 (holding that merit criteria for evaluating disciplinary suspensions "must be job-related and in some rational and logical manner touch upon competency and ability").

We discern no error in the Commission's determination that Employer demonstrated good cause to impose the ADLS-2 on the basis of Burock's unsatisfactory job performance during the first rating period. As related at length above, Employer provided ample documentary evidence, in addition to the credible testimony of supervisors who met regularly with Burock and reviewed his work, establishing that Burock repeatedly failed to meet basic job performance standards

20

even after extensive assistance and instruction from Employer. *Accord Shade v. Pa. State Civ. Serv. Comm'n (Pa. Dep't of Transp.)*, 749 A.2d 1054, 1055-58 (Pa. Cmwlth. 2000) (holding that appointing authority had good cause to impose on employee an ADLS carrying the weight of a five-day suspension, where employee failed repeatedly to achieve a "Satisfactory" overall rating in his job performance review, despite exhibiting improvement in certain individual job performance categories, and where employer had provided employee with a work plan outlining 15 performance standards and conducted quarterly review sessions with employee to discuss his unsatisfactory job performance).

Nevertheless, Burock points out that he performed his job for roughly six years before receiving his first "Unsatisfactory" job performance rating. *See* Burock's Br. at 15. However, Burock's assertion regarding his performance between 2012 and 2018 does not bear upon his unsatisfactory job performance during the first rating period, which gave rise to the challenged ADLS-2.

Burock also contends that the Commission failed to accord sufficient weight to the evidence he presented at the hearing. *See* Burock's Brief at 14.[21] "It is axiomatic that the Commission, not this Court, has the power to resolve questions of credibility and to weigh the evidence." *Shade*, 749 A.2d at 1056 (citing *Toland*, 506 A.2d at 506); *see also Perry v. State Civ. Serv. Comm'n (Dep't of Lab. & Indus.)*, 38 A.3d 942, 948 (Pa. Cmwlth. 2011) (stating that "[i]n civil service cases,

---

[21] We note that Burock fails to direct the Court to any particular portion of the record in support of his arguments. *See* Pa.R.A.P. 2119(c) ("If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears."). We, therefore, decline Burock's invitation for the Court to search for "[his] responses (part of the record) to every point brought up in the interim EPRs used to arrive at [his] ADLS[-]2 and removal." Burock's Br. at 18. *See Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (explaining that an appellate court will not "scour the record to find evidence to support an argument").

the Commission is the sole fact-finder"). "As such, determinations as to witness credibility and resolution of evidentiary conflicts are within the Commission's sole province, and we will not reweigh the evidence or substitute our judgment . . . ." *Perry*, 38 A.3d at 948. Further, "[t]he fact that the Commission gave greater weight to the testimony of [Burock's] supervisor[s] than to the testimony of [Burock] is not an error or abuse of the Commission's fact-finding function." *Shade*, 749 A.2d at 1056.

Moreover, Burock does not dispute any particular credibility determination of the Commission, instead levying general accusations regarding the veracity and the motives of Employer's witnesses in an effort to undermine their testimony. *See Shade*, 749 A.2d at 1056 (rejecting disciplined employee's reliance "on his own version of the facts as opposed to the findings as made by the Commission based upon its credibility determination" even though "[i]t [was] clear from the Commission's decision that it found credible the testimony from the witnesses of the [appointing authority], not [the employee's] testimony, where there was a conflict"). Accordingly, we will not disturb the Commission's credibility findings.

## B. Just Cause for Removal

"No regular employee in the classified service may be removed, except for just cause." Section 2607 of the Act, 71 Pa.C.S. § 2607. "In an appeal from the removal of a regular status employee, the appointing authority has the burden of establishing just cause for its action." *Mihok v. Dep't of Pub. Welfare*, 607 A.2d 846, 848 (Pa. Cmwlth. 1992). Just cause for removal "must be merit-related and the

22

criteria must touch upon competency and ability in some rational and logical manner." *Woods v. State Civ. Serv. Comm'n*, 912 A.2d 803, 808 (Pa. 2006).

The Commission concluded that Employer's provision of documentary evidence and credible testimony demonstrating Burock's repeated failure to improve his unsatisfactory job performance established just cause for his termination, further noting that termination constituted the next step in progressive discipline. Comm'n Adj., 4/29/21 at 32-34, S.R.R. at 439b-41b. We agree. The January 2019 PIP cautioned Burock that failure to achieve an overall rating of "Satisfactory" in the next interim EPR could result in progressive discipline, up to and including removal. F.F. 15. However, despite exhibiting improvement in one job performance category, Burock again received an "Unsatisfactory" overall job performance rating in the June 2019 interim EPR. We, therefore, agree with the Commission that Employer demonstrated just cause to terminate Burock's employment. *See Harper v. Dep't of Pub. Welfare*, 553 A.2d 521, 524-25 (Pa. Cmwlth. 1989) (concluding that substantial evidence supported employer's just cause to remove employee, where employee failed to demonstrate significant improvement despite meeting regularly with his supervisor, receiving specific guidance and being afforded multiple opportunities for improvement).

### C. Discrimination

"An officer or employee of the Commonwealth may not discriminate against an individual in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of race, gender, religion, disability or political, partisan or labor union affiliation or

23

other nonmerit factors." Section 2704 of the Act, 71 Pa.C.S. § 2704.[22] "Although the burden of proof for establishing a *prima facie* case of employment discrimination is not an onerous one, the burden nevertheless rests with the employee alleging the discrimination." *Bruggeman*, 769 A.2d at 553; *see also Pronko v. Dep't of Revenue*, 539 A.2d 456, 461 (Pa. Cmwlth. 1988) (citing 4 Pa. Code § 105.16).[23] Satisfying this burden requires the production of affirmative evidence in support of the allegation; the Commission may not simply infer discrimination. *Id.*

In traditional discrimination cases,[24] the burden is on the petitioner to make out a *prima facie* case of discrimination by producing sufficient evidence that, if believed and otherwise unexplained, indicates that more likely than not discrimination has occurred. *Dep't of Health v. Nwogwugwu*, 594 A.2d 847, 849 (Pa. Cmwlth. 1991). When claiming disparate treatment, a complainant must demonstrate that he was treated differently from other employees similarly situated. *Id.* If the complainant meets this burden, the burden of production shifts to the employer to advance a legitimate non-discriminatory reason for the disciplinary

---

[22] Section 2603(b) of the Act also prohibits an appointing authority from discriminating against an employee holding a position in the classified service by issuing a suspension without pay on the basis of "race, gender, religion, disability or political, partisan or labor union affiliation or any other nonmerit factor." 71 Pa.C.S. § 2603(b).

[23] Section 105.16 of the Commission's regulations provides, in relevant part:

> The appellant shall go forward to establish the charge or charges of discrimination. If at the conclusion of this presentation, the appellant has, in the opinion of the Commission, established a prima facie case, the appointing authority shall then be afforded the opportunity to reply to the charges.

4 Pa. Code § 105.16.

[24] "'Traditional discrimination' has been held to encompass only those claims of discrimination based on race, sex, national origin, or the like." *Dep't of Health v. Nwogwugwu*, 594 A.2d 847, 849 n.4 (1991).

24

action. *Id.* at 850. However, an employer is not required, as part of its burden, to persuade the Commission that it was actually motivated by the proffered reason or reasons. *Henderson v. Off. of the Budget*, 560 A.2d 859, 864 (Pa. Cmwlth. 1989). All that is required is that the employer's evidence raise a genuine issue of fact as to whether it discriminated against the complainant. *Id.* If an employer succeeds in rebutting the presumption of discrimination raised by the complainant's *prima facie* case, the complainant must then demonstrate by a preponderance of the evidence that the employer's articulated reason was merely a pretext for discrimination. *Wei v. State Civ. Serv. Comm'n*, 961 A.2d 254, 259-60 (Pa. Cmwlth. 2008).

Burock essentially asserts that Employer discriminated against him on the basis of age and gender by taking disciplinary action against him while permitting a younger, female employee to carry a lighter workload and to make personal calls during work hours. We disagree.

As noted by the Commission, Burock provided no evidence as to his age or the claimed disparate treatment on the basis of age. *See* Comm'n Adj., 4/29/21 at 35, S.R.R. at 442b. Regardless, Burock fails to establish that he was similarly situated to either Chitnis or Ridge, the allegedly younger and less experienced female employees. *See id.*[25] Although Burock maintains that Employer's motivation for imposing the challenged disciplinary actions was discriminatory, the Commission credited the testimony of Employer's witnesses detailing Burock's inadequate job performance. *See Perry*, 38 A.3d at 958 (affirming a decision of the Commission sustaining an employer's disciplinary

---

[25] Further, undermining his assertion that Employer discriminated against him on the basis of gender by delegating fewer assignments to female Accountant 3 employees, as noted above, Employer in fact reduced Burock's workload during both rating periods by restricting his involvement with the type of special projects typically completed by Accountant 3 employees due to his poor job performance. *See* F.F. 32; T.T. 2020 at 152, S.R.R. at 154b.

25

action, reasoning that "[a]s fact-finder, the Commission opted to believe [the employer's] explanation regarding the motivation for [the manager's] removal"); *Tate-Burns v. State Civ. Serv. Comm'n* (Pa. Cmwlth., No. 1304 C.D. 2015, filed Nov. 10, 2016), slip op. at 5-6 & 10-11 (noting that "[i]nsofar as [employee's] testimony differed from [the a]ppointing [a]uthority's witnesses, the Commission found the latter more credible"). Further, Burock's assertion that he had performed the same job for roughly six years before receiving his first "Unsatisfactory" job performance rating is of no moment. *See Tate-Burns*, slip op. at 5-6 & 10-11 (affirming the Commission's determination that employer suspended employee solely for the legitimate, non-discriminatory reason that she failed to comply with its time and attendance procedures, and not in retaliation for reporting her supervisor's alleged misconduct, notwithstanding employee's assertions that her suspension constituted the first discipline imposed by employer in 24 years).

We deem baseless Burock's contention that the Commission "never even considered the possibility of retaliation in their [sic] discussion." *See* Burock's Br. at 14. The Commission determined that Burock failed to establish a *prima facie* case of retaliatory discrimination, specifically crediting Jerosky's testimony that the alleged events from 2017 identified by Burock did not influence the challenged disciplinary actions. Comm'n Adj., 4/29/21 at 35-36, S.R.R. at 442b-43b. Regarding Jerosky's recollection of Jones' purported assertion that "[i]t would be better for all if [Burock] were not here at all," the Commission concluded that Burock failed to present any evidence suggesting that this purported statement motivated either the issuance of the ADLS-2 or his removal. *Id.* at 26, S.R.R. at 433b. Moreover, the Commission concluded that Burock's poor job performance constituted a legitimate non-discriminatory reason for the adverse employment

26

actions. *See Id.* at 36, S.R.R. at 443b. *See Perry*, 38 A.3d at 957-58 (affirming the Commission's rejection of complainant's claim that his suspension and discharge were motivated by discrimination in retaliation for providing testimony that was adverse to employer's position in a separate civil service proceeding, where employer's credible testimony established that disciplinary actions were in fact based on the legitimate non-discriminatory reason).

Further, we note that, apart from citing a defunct provision of the former Civil Service Act, Burock fails to provide any supporting legal authority in his appellate brief. *See* Pa.R.A.P. 2119(a) ("[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, *followed by such discussion and citation of authorities as are deemed pertinent*") (emphasis added); *Commonwealth of Pa. v. Johnson*, 985 A.2d 915, 924 (2009) (internal citations omitted) ("where an appellate brief fails to provide any discussion of a claim *with citation to relevant authority* or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived") (emphasis added); *see also Shade*, 749 A.2d at 1057 (stating that a disciplined civil service employee failed to fully develop his argument by generally asserting without elaboration that his employer failed to assess each job rating factor in relation to established standards in evaluating his job performance).

### III. Conclusion

For the foregoing reasons, we affirm the Commission's determination that Employer satisfied its burden of establishing good cause to impose the ADLS-2 and just cause to terminate Burock on the basis of his unsatisfactory job

27

performance and that Burock failed to provide evidence demonstrating that Employer's disciplinary actions were discriminatory.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank M. Burock,          :
           Petitioner      :
                                  :
        v.                       :
                                  :
Office of the Budget       :
(State Civil Service Commission),  :   No. 656 C.D. 2021
           Respondent   :

## O R D E R

AND NOW, this 9th day of May, 2022, the April 29, 2021 adjudication of the State Civil Service Commission is AFFIRMED.

 

_____
CHRISTINE FIZZANO CANNON, Judge